UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MEDLINE INDUSTRIES, LP, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>C.R. BARD, INC., )<br>)<br>Defendant. ) | Civil Action No. 1:20-cv-03981-JPB |

**SPECIAL MASTER'S REPORT AND RECOMMENDATION
REGARDING MEDLINE'S MOTION TO STAY**

Pursuant to this Court's Order dated November 30, 2022, the following is the report and recommendation from the undersigned special master regarding Plaintiff Medline's Motion to Stay This Action Pending Resolution of *Medline I* (Doc. 98) until the Northern District of Illinois enters final judgment in *Medline Industries, LP v. C.R. Bard, Inc.*, No. 1:14-cv-03618 ("*Medline I*") which is set for trial in April, 2023.

**I.   BACKGROUND**

Filed in 2014, the *Medline I* action involves the same patent that is asserted in this case: U.S. Patent No. 8,448,786, "Catheter Tray, Packaging System,

Instruction Insert, and Associated Methods" (the "'786 Patent"). The '786 Patent relates to a method of using a catheterization kit which is designed to reduce the incidence of catheter-associated urinary tract infections ("CAUTIs").

This case is the fourth patent infringement action Medline has commenced against Bard relating to catheter kits and the second involving the '786 Patent. Medline asserted the '786 Patent and several other patents related to the same general technologies in three actions filed in the United States District Court for the Northern District of Illinois (*Medline I, II and III*). In this action as well as the Illinois *Medline I* case, Bard is accused of indirectly infringing Claim 1[1] of the '786 Patent by inducing direct infringement in violation of 35 U.S.C. § 271(b) and contributing to direct infringement in violation of 35 U.S.C. § 271(c). The accused products in both *Medline I* and this action (*Medline IV*) are Bard's SureStep Foley Kits which contain a Foley catheter and other components arranged in a single-layer, thermoformed tray.

---

[1] 1. A method of using a catheter package assembly, comprising:
  opening a thermally sealed bag disposed about a tray having a catheter assembly disposed therein;
  accessing an instruction manual;
  unfolding one or more layers of wrap to reveal an additional layer of wrap and the catheter assembly; and
  placing one of the one or more layers of wrap or the additional layer of wrap beneath a patient, thereby transforming an area beneath the patient from a non-sterile field to a sterile field.

2

The SureStep kits which are the accused products in the *Medline I* action come in two sizes and are referred to by the parties as "A" (the smaller tray) and "B" (the larger size). Those trays contain one or more openings in the straight barrier wall between the compartment containing the catheter, tubing and a drainage receptacle and the compartment containing syringes.

Trays A and B are collectively referred to by the parties as the "Original" SureStep Foley Kits because in February, 2016, Bard began selling, and continues to sell, a version of the SureStep Foley Kit with a redesigned tray having a curved barrier wall with no opening in the wall between the catheter and syringe compartments (the "Redesigned" SureStep Foley Kit). The parties refer to the smaller and larger variants of the current Redesigned SureStep Foley Kit as the "C" and "D" kits, respectively.

In the *Medline I* action, Bard successfully argued that Medline should be barred from presenting expert reports regarding Bard's Redesigned SureStep Foley Kits due to Medline's failure to timely amend its Final Infringement Contentions which were served in 2015 while only the Original SureStep Foley Kits were being sold by Bard. As a result, Medline then filed the current lawsuit against Bard in this court (*Medline IV*) alleging that the Redesigned SureStep Foley Kits infringe Claim 1 of the '786 Patent.

## II. LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) (citations omitted). "In determining whether to stay a patent infringement proceeding, courts consider: (1) whether a stay will simplify the issues and streamline the trial, (2) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party, and (3) whether a stay will reduce the burden of litigation on the parties." *Emerson Elec. Co. v. Sipco LLC*, 2016 WL 8928312 at *3 (N.D. Ga. 2016).

## III. ANALYSIS

On page 1 of its opening brief in support of its Motion to Stay (Doc. 98), Medline states that "[a] stay will streamline this action (if not dispose of it) because a judgment in *Medline I* will have preclusive effect on at least the core issues of infringement, claim scope, and validity. The accused acts of infringement in the two actions are materially the same . . . ." However, that position contradicts the prior position taken by Medline in the *Medline I* case in its ultimately successful opposition to Bard's Motion to Enjoin this *Medline IV* action. Bard's position in that Motion was that, by filing the *Medline IV* case, Medline had

4

engaged in claim splitting that is prohibited under the doctrine of claim preclusion as applied in the patent context.

In its *Medline I* brief in response to Bard's Motion to Enjoin this action, at pages 10-11 (Bard's Exh. A, Doc. 100-2), Medline stated that an "... injunction is also inappropriate because <u>*Medline IV* is 'not duplicative' of *Medline I*. . . . The claim that Medline asserts in *Medline IV* is simply not the same as any claim it asserts in *Medline I*.</u>" *Id.* at pages 10-11(emphasis added) (Doc.100-2).

Medline went on to state the following in its *Medline I* brief in response to Bard's Motion to Enjoin, at pages 13-4 (citations omitted):

> **A. The Claim that Medline Asserts in *Medline IV* Arose after the Filing of the Operative Complaint in *Medline I* and Will Never be Actually Litigated in *Medline I*.**
>
> * * *
>
> ... Bard's redesigned SureStep kit was launched after *both* the date the operative complaint was filed [in *Medline I*] and the date Medline's Final Infringement Contentions were due, so Medline was not required to accuse the redesigned kit in this suit to avoid claim preclusion. And the redesigned kit was subsequently excluded from the case by an order of the Court, so <u>Medline's claims as to the [redesigned] kit will never be actually litigated in this case. As such, Medline is not precluded from asserting a claim against the current SureStep kit in *Medline IV*, even if the kit is identical to the original in all relevant respects.</u>
>
> Additionally, and independently, it is also well-established that a first suit that provides relief that is limited to a particular period of time will not preclude the patentee from seeking relief as to a later period of time in a second suit, <u>even if the products accused in the second suit are not just "essentially the same" but literally future sales</u>

5

<u>of the very same product accused in the first suit</u>. . . . <u>Here, Medline IV seeks relief for a period of time not covered by Medline I</u>. Bard itself asserts that Medline "cannot seek damages for any trays that Bard has sold since 2016" in *Medline I* because Bard discontinued sales of the original SureStep kit during 2016 as it replaced those sales with the current SureStep kit. . . . For this reason too, <u>Medline I does not preclude Medline IV</u>.

The *Medline I* Court agreed with Medline's above arguments and, in its Order (Exh. A to Medline's Opening Brief (Doc. 98-5)), denied Bard's Motion to Enjoin the present action, stating that "whether Trays C and D infringe the '786 will not be litigated in *Medline I*" (*Id.* at page 3), that "redesigned Tray C and D are not essentially the same as the original Tray A and B . . . [n]or are the differences between Bard's redesigned and original products merely colorable or unrelated to the claim limitations" and that the differences between the original and redesigned SureStep trays "affect the infringement analysis . . . in Claim 1 of the '786 patent." *Id.* at page 6.

Now, Medline tells this Court that "the [Original and Redesigned] kits are essentially the same, and the way the kits are used by clinicians during infringement is identical for the purposes of Claim 1 of the '786 Patent" (Medline's Opening Brief, at page 5 (Doc. No. 98-1)). As a result, Medline asserts that "[e]ntry of final judgment after the April 2023 trial in *Medline I* will thus have issue-preclusive effect on multiple core issues pending in this action" and that a stay will "streamline this action."

6

A. <u>Issue Preclusion</u>

For issue preclusion to apply, "(1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding. . . ." *CSX Transp., Inc. v. Brotherhood of Maintenance of Way Employees*, 327 F.3d 1309, 1317 (11th Cir. 2003); *see, also, Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1382-83 (Fed. Cir. 2018).

Looking at the first factor in determining whether the infringement issue in *Medline I* is "identical" to the infringement issue to be litigated in the present case, the Original SureStep kit would need to be "identical" to the Redesigned SureStep kit. A product is "identical" for purposes of issue preclusion in a patent infringement case

> . . . "where it is shown that a close identity exists between the relevant features of the accused device and the device previously determined to be infringing" such that they are "essentially the same." . . . "Accused devices are 'essentially the same' where the differences between them are merely 'colorable' or 'unrelated to the limitations in the claim of the patent.'" . . . The proponent of claim or issue preclusion bears the burden of showing that the accused devices are essentially the same as those in the prior litigation. . . .

*ArcelorMittal Atlantique et Lorraine v. AKSteel Corp.*, 908 F.3d 1267, 1274 (Fed.Cir. 2018) (citations omitted).

As noted above, in its opposition in *Medline I* to Bard's Motion to Enjoin this action, Medline was very adamant that the Original SureStep kit and the Redesigned SureStep kit were not "essentially the same" since its claim for infringement [of the Redesigned SureStep kit] in this case "did not exist at the time *Medline I* was filed and will never be actually litigated in *Medline I*;" the *Medline I* court agreed with Medline, holding that the Redesigned SureStep kit "was not essentially the same" as the Original SureStep kit.

In view of the above, Medline's Motion to Stay should be denied, because it has not met its burden of satisfying the first criteria for whether issue preclusion exists, namely, whether the same infringement claim in *Medline I* is being relitigated in this action. Since "[Bard] need only point to one material differentiating fact that would alter the legal inquiry here and thereby overcome the preclusive effect of [*Medline I*]," the doctrine of issue preclusion cannot be applied in this matter. *CSX Transp., Inc. v. Brotherhood of Maintenance of Way Employees*, 327 F.3d 1309, 1317 (11th Cir. 2003).

However, there are other reasons why issue preclusion does not exist, one of which is based upon the judicial estoppel doctrine, because Medline's prior statements in *Medline I* in opposition to Bard's Motion to Enjoin are completely

8

and fundamentally at odds with the position it adopts in this case in attempting to support its Motion to Stay.

### B. Judicial Estoppel

"The doctrine of judicial estoppel is that where a party *successfully* urges a particular position in a legal proceeding, it is estopped from taking a contrary position in a subsequent proceeding where its interests have changed." *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir. 1996) (emphasis added); *see also Slater v. U. S. Steel Corp.*, 820 F.3d 1193, 1195 (11th Cir. 2016) (judicial estoppel "precludes a party from asserting a . . . position that contradicts or is inconsistent with a prior position taken by the same party.").

As stated in *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (citations omitted):

> Courts have observed that "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." . . . Nevertheless, several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be "clearly inconsistent" with its earlier position. . . . Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled." . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.
>
> The following addresses the *New Hampshire* factors, in turn:

1. To be "clearly inconsistent," positions must be "mutually exclusive" and "directly inconsistent." *RFF Family P'ship v. Ross*, 814 F.3d 520, 528 (1st Cir. 2016). As set out above, the statements Medline set forth in *Medline I* in objecting to Bard's Motion to Enjoin this action (such as: "The claim that Medline asserts in *Medline IV* is simply not the same claim as any claim it asserts in *Medline I*" and "Medline's claims as to the [Redesigned] kit will never be actually litigated in this case") are clearly "mutually exclusive" and "directly inconsistent" with the position it takes in support of its Motion to Stay in his action (such as: "A stay will streamline this action (if not dispose of it) because a judgment in *Medline I* will have preclusive effect on at least the core issues of infringement, claim scope and validity").

2. Medline "succeeded in persuading [the *Medline I*] court to accept [its] earlier position so "judicial acceptance of [Medline's] inconsistent position" in this court "would create the perception that either the [*Medline I* court or this] court was misled."

3. Medline "would derive an unfair advantage or impose an unfair detriment on [Bard] if not estopped," because a stay of this action would unduly prejudice Bard. Medline seeks a stay of this case until there is a "resolution of *Medline I*." The "resolution" of that case will more than likely not occur until judgment is entered in the appeal by one of the parties to the Federal Circuit of the judgment rendered

10

at the trial of *Medline I*. Meanwhile, according to Bard, the sale of the accused product in this litigation, the Redesigned SureStep Kit, has been on sale since 2016. "The passage of time frequently fades witnesses' memories and can make it more difficult to locate key witnesses and evidence." *Great American Insurance Company v. Watson*, 2015 WL 13021801 at *2 (S.D. Ga. 2015). Also, as Bard noted,

> . . . the passage of time has had an impact on prior art as well. Bard presented both scans and physical samples of prior art trays for inspection by Medline on July 26, 2022. . . . In response, Medline asserted that these physical samples may have been damaged by the passage of time, including by components changing shape or configuration in the course of sitting in a thermo-sealed package for nearly a decade. . . .

Bard's Opposition Brief, at page 21.

Each of the factors that "typically inform" the decision whether to apply the judicial estoppel doctrine in this case has been met. As a result, Medline is judicially estopped from arguing in this matter that the Original and the Redesigned kits are "essentially the same" when it stated in *Medline I* that they were not. As a result, Medline has not met its burden of satisfying the first criteria for whether issue preclusion exists, namely, whether the same infringement claim in *Medline I* is being relitigated in this action. Since "[Bard] need only point to one material differentiating fact that would alter the legal inquiry here and thereby overcome the preclusive effect of [*Medline I*]," the doctrine of issue preclusion

11

should not be applied in this matter. *CSX Transp., Inc. v. Brotherhood of Maintenance of Way Employees*, 327 F.3d 1309, 1317 (11th Cir. 2003). Therefore, a judgment in *Medline I* in favor of Medline would not have preclusive effect in this case.

Additionally, Medline assumes that the judgment in *Medline I* will be in its favor which is far from certain since the validity of Claim 1 of the '786 Patent is very much in question in view of the *Medline I* court's Order (Medline's Exhibit F) with regard to Bard's motion for partial summary judgment as to anticipation. "While the summary judgment order found [in Medline's favor] that the accused products infringed [Claim 1], that does not mean that [Medline] is entitled to judgment in its favor. [Bard] will seek to show at trial that [Claim 1] is invalid. . . . If [Bard] is successful, [Medline] will not be entitled to equitable relief." *ContourIP Holding, LLC v. GoPro, Inc.*, 2021 WL 1022854, at *7 (N.D. Cal. 2021). The review of that *Medline I* Order in Part C below clearly illustrates that judgment in Medline's favor in *Medline I* cannot be assumed, as Medline contends.

## C. Bard's Motion for Summary Judgment as to Anticipation

In the *Medline I* case, Medline moved for partial summary judgment as to infringement and several of Bard's affirmative defenses, including inequitable conduct, equitable estoppel, implied license, and anticipation and Bard cross-moved for partial summary judgment as to anticipation. In its March 22, 2022

Order (Medline's Exh. F), the *Medline I* court ruled that Medline's motion for partial summary judgment was granted-in-part and denied-in-part with regard to infringement and was granted as to Bard's defenses of inequitable conduct, estoppel, and implied license.

Bard had filed a cross-motion for partial summary judgment as to anticipation, arguing that the '786 Patent was anticipated under 35 U.S.C. § 102(a) and (b). The anticipation argument was based on prior art identified as the "Intermittent Tray" that Bard contended was known and used by others and on sale in this country more than one year before June 30, 2009, which is the earliest filing date of the '786 Patent's family of patent applications (known as the "critical date"). As to whether an Intermittent Tray existed before the critical date, the Order noted that Medline had conceded that Bard had raised a triable issue of fact as to whether some version of the Intermittent Tray existed before the critical date. *Id*. at page 37. "The question then is whether any of Bard's Intermittent Trays that were sold prior to the critical date discloses each element [in Claim 1] of the '786 Patent." *Id*.

As to the issue of whether Claim 1 of the '786 Patent was anticipated by the Intermittent Tray disclosing each element of Claim 1, the *Medlin I* court noted that the dispute centered around whether the Intermittent Tray discloses the claimed "catheter assembly" which the Court had previously construed to mean "[a] coiled

medical device that includes a catheter connected via tubing to a drainage receptacle." The court then noted that "[t]he parties have focused on the meaning of the words 'coiled' and 'tubing.' According to Bard, the version of the tray that was sold prior to the critical date disclosed a 'coiled medical device' with tubing.'" *Id.* at pages 37-8.

As to a "coiled medical device," the court concluded "that there are genuine issues of material fact as to whether an Intermittent Tray sold before the critical date discloses a 'coiled medical device.'" *Id.* at page 46.

As to whether the Intermittent Tray disclosed "tubing," the court found that "no reasonable jury could find that the Intermittent Tray does not disclose tubing." *Id.* at page 47.

As a result, Bard's cross-motion for partial summary judgment as to anticipation was granted-in-part and denied-in-part. That means that whether Claim 1 of '786 Patent is anticipated and, thus, invalid, requires the *Medline I* jury, after assessing "[t]he credibility of the experts and the weight to be assigned to their opinions as well as other evidence" (*Id.* at page 46), to decide only the narrow issue of whether or not any of the prior art Intermittent Tray disclosed a "coiled medical device." As a result, judgment in favor of Medline in the *Medline I* case cannot be presumed.

D. <u>Claim Construction</u>

Medline also argues that, if it secures a judgment in its favor in *Medline I*, "issue preclusion will eliminate a claim scope dispute currently pending before this Court." Medline's Opening Brief, at page 12. The parties in this action have agreed to the construction of two terms in Claim 1 ("accessing an instruction manual" and "instruction manual") and dispute two other claim terms ("catheter assembly" and "reveal"/ "reveal an additional layer of wrap and the catheter assembly"). Supplemental Joint Claim Construction Statement, Doc. 70.

Medline, at pages 1-2 of its Opening Brief (footnote omitted), argues that:

> [t]he parties . . . are also litigating claim 1 of the '786 patent in *Medline I* (with a different version of Bard's accused product at issue), and the meanings of these same two terms [contested in *Medline IV*] have already been resolved in that action, including (for one of the two terms) by Bard's agreement to the claim construction. The intrinsic and extrinsic evidence have not changed. There is no basis for interpreting the claims differently here. . . . [T]he constructions from *Medline I* should be adopted.

The claim scope dispute in this action is not precluded by the *Medline I*'s claim construction Order. As stated in *IGT v. Bally Gaming Intern., Inc.*, 659 F.3d 1109, 1117 fn.1 (Fed. Cir. 2011): "We recognize that in a different district court case, the court construed 'one' as one and only one command. . . . As counsel for both sides acknowledged, such a construction was merely persuasive authority and did not bind the district court in this case"; *see, also Rambus Inc. Hynix Semiconductor Inc.*, 569 F. Supp. 2d 946, 965 (N.D. Cal. 2008) (emphasis in the

original) ("Since *Markman,* various district courts have taken slightly different approaches to other courts' claim constructions, but . . . no one has applied *stare decisis*[2]. . . . [A] second court should *not* defer to a prior court's claim construction without questioning its accuracy."). Thus, the *Medline I* claim construction, unless affirmed on appeal by the Federal Circuit, will not eliminate a claim scope dispute currently pending in this matter. "This court will take into account [*Medline I*'s] claim construction as a thoughtful and thorough analysis of the parties' arguments involving the same patent and the same claim—but, in the end, will render its own independent claim construction." *Maurice Mitchell Innovations, L.P. v. Intel Corp.,* 2006 WL 1751779 at *4 (E.D. Tex. 2006), *aff'd,* 249 F. App'x 184 (Fed. Cir. 2007).

As noted above, Medline also argues that preclusion will apply to the issue of infringement, because the accused product in this action (the Redesigned SureStep kit) is "essentially the same" as the adjudged-infringing product in *Medline I* (the Original SureStep kit) and the meanings of the same two terms in Claim 1 being contested in this action have already been resolved in *Medline I*. *See,* Medline's Opening Brief, at pages 1-2. However, it is premature for this court

---

[2] *Stare decisis* is applied to Federal Circuit decisions involving claim construction. *Key Pharm. v. Hercon Labs. Corp.,* 161 F.3d 709, 716 (Fed. Cir. 1998) ("We do not take our task lightly in this regard, as we recognize the national *stare decisis* effect that this court's decisions on claim construction have.")

to make a determination as to whether the Original and the Redesigned kits are "essentially the same" since "this action remains in its early stages [and] the court has not yet issued a claim construction order or held a hearing on claim construction. . . ." Medline's Reply Brief, at page 17 (Doc. 98-1).  As such, this court has not construed the meaning of the claim terms in Claim 1 that presently are in dispute so no determination of whether the Original and the Redesigned kits are "essentially the same" can be made, at this time.

## IV.  CONCLUSION

In considering the issues courts evaluate in determining whether to stay a patent infringement proceeding, namely, (1) whether a stay will simplify the issues and streamline the trial, (2) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party, and (3) whether a stay will reduce the burden of litigation on the parties (*Emerson Elec. Co., supra)*, the answer is "No" to each in this matter.  While a stay of patent litigation may be appropriate in certain circumstances, the co-pending *Midland I* suit and this action are "neither duplicative nor dependent on one another [so] there is neither any need nor any

justification" for a stay. *Slip Track Systems, Inc. v. Metal Lite, Inc.*, 159 F.3d 1337, 1341 (Fed. Cir. 1998). Therefore, I recommend that Medline's Motion to Stay This Action Pending Resolution of *Medline I* be DENIED.

Date: *January 19, 2023*       *William H. Needle*
　　　　　　　　　　　　　　　　　　Special Master