UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MEDLINE INDUSTRIES, L.P., <br><br> Plaintiff, <br><br> v. <br><br> C.R. BARD, INC., <br><br> Defendant. | CIVIL ACTION NO. <br> 1:20-CV-03981-JPB |

## ORDER

This matter is before the Court on the Special Master's Report and Recommendation [Doc. 137] regarding the claim construction of certain terms in United States Patent No. 8,448,786 ("the '786 Patent"). This Court finds as follows:

## FACTS AND PROCEDURAL HISTORY

This is a dispute concerning the '786 Patent, which is entitled "Catheter Tray, Packaging System, Instruction Insert, and Associated Methods." In this case, Medline Industries, L.P. ("Plaintiff") alleges that C.R. Bard, Inc. ("Defendant") infringed Claim 1 of the '786 Patent. Claim 1 reads as follows:

> A method of using a catheter package assembly, comprising:
>
> opening a thermally sealed bag disposed about a tray having a catheter assembly disposed therein;

    accessing an instruction manual;

    unfolding one or more layers of wrap to reveal an additional layer of wrap and the catheter assembly; and

    placing one of the one or more layers of wrap or the additional layer of wrap beneath a patient, thereby transforming an area beneath the patient from a non-sterile field to a sterile field.

[Doc. 1, p. 13].

Here, the parties dispute certain terms contained in Claim 1 of the Patent. More specifically, the parties disagree as to the construction of "catheter assembly" and the construction of "reveal" or "reveal an additional layer of wrap and the catheter assembly."

On November 30, 2022, the Court appointed William H. Needle as Special Master to preside over claim construction in this case under <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967 (Fed. Cir. 1995).[1]  [Doc. 115].  The Special Master issued his Report and Recommendation, which contained three distinct recommendations, on May 2, 2023.  [Doc. 137].  First, the Special Master recommended that the qualifications of a person of ordinary skill in the art as to the '786 Patent is "one who would have a bachelor's degree in mechanical engineering

---

[1] The Court's appointment of Mr. Needle was not limited to claim construction alone. Claim construction, however, is the only issue presently before the Court.

or equivalent technical degree and at least two years of experience in the medical device packaging field." Id. at 14.  Second, as to the first disputed term—"catheter assembly"—the Special Master recommended the following construction: "a coiled medical device that includes a catheter connected via tubing to a drainage receptacle." Id. at 24.  Third, as to the second disputed term —"reveal" and "reveal an additional layer of wrap and the catheter assembly"— the Special Master recommended construing "reveal" to mean "to make visible or able to be seen" and construing "reveal an additional layer of wrap and the catheter assembly" to mean "to make an additional layer of wrap and the catheter assembly visible or able to be seen." Id. at 28.

On May 16, 2023, both parties filed objections to the Special Master's Report and Recommendation.  [Doc. 138]; [Doc. 140].

## LEGAL STANDARD

**1. Standard of Review of the Report and Recommendation**

In acting upon a Special Master's report, courts have broad discretion to "adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions." Fed. R. Civ. P. 53(f)(1).  Importantly, where, as here, objections are made to either the findings of facts or the conclusions of law, the objections must be decided *de novo*. See Fed. R. Civ. P. 53(f)(3)-(4).

3

**2. <u>Standard of Review for Claim Construction</u>**

The first step of an infringement analysis is "a construction of each asserted claim to determine the subject matter encompassed thereby." <u>Trovan, Ltd. v. Sokymat SA, Irori</u>, 299 F.3d 1292, 1302 (Fed. Cir. 2002). Claim construction "is a question of law, to be determined by the court." <u>Markman</u>, 517 U.S. at 384. A patent's claimed terms "are generally given their ordinary and customary meaning." <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1312 (Fed. Cir. 2005). Notably, this refers to the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." <u>Id.</u> at 1313.

In construing claims, a court's "analysis must begin and remain centered on the claim language itself, for that is the language the patentee has chosen to particularly point out and distinctly claim the subject matter which the patentee regards as his invention." <u>Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.</u>, 381 F.3d 1111, 1116 (Fed. Cir. 2004). Moreover, a court must also interpret claims "with an eye toward giving effect to all terms in the claim," <u>Bicon, Inc. v. Straumann Co.</u>, 411 F.3d 945, 950 (Fed. Cir. 2006), and should avoid an interpretation that renders terms superfluous, <u>Merck & Co. v. Teva Pharm. USA, Inc.</u>, 395 F.3d 1363, 1372 (Fed. Cir. 2005).

"In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."  Phillips, 415 F.3d at 1314.  However, because the meaning of a claimed term is often not immediately apparent, courts look to "sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean."  Id.  These include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art."  Id.  Although extrinsic evidence may "shed useful light on the relevant art," it is considered "less significant than the intrinsic record in determining the legally operative meaning of claim language."  Id. at 1317.  Indeed, a court should not rely on extrinsic evidence unless the intrinsic evidence is insufficient to enable the court to determine the meaning of the asserted claims.  Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1584 (Fed. Cir. 1996).

## DISCUSSION

As stated above, both parties filed objections to the Report and Recommendation. The objections will be discussed as they relate to the Special Master's recommendations.

1. **Level of Skill in the Art**

"One must bear in mind . . . that patents are 'not addressed to lawyers, or even to the public generally,' but rather to those skilled in the relevant art." Nautilus Inc. v. Biosig Instruments, Inc., 572 U.S. 898, 909 (2014). Thus, a threshold inquiry in the claim construction process is "how a person of ordinary skill in the art would have understood claim terms at the time of the invention." Pfizer, Inc. v. Teva Pharm., USA, Inc., 429 F.3d 1364, 1372-73 (Fed. Cir. 2005). This inquiry "provides an objective baseline from which to begin claim interpretation." Id.

In this case, Defendant proposed that a person of ordinary skill in the art would be an individual with a bachelor's degree in mechanical engineering or equivalent technical degree and at least two years of experience in the medical device field. Notably, Plaintiff did not dispute Defendant's definition for the purpose of claim construction. Plaintiff, however, specified that it wanted to

reserve "all rights to argue, at an appropriate time, for a different level of ordinary skill with respect to other issues in this case." [Doc. 137, p. 11].

In his Report and Recommendation, the Special Master slightly tweaked Defendant's proposed language and determined that a person of ordinary skill in the art was "one who would have a bachelor's degree in mechanical engineering or equivalent technical degree and at least two years of experience in the medical device *packaging* field." Id. at 14 (emphasis added). In Plaintiff's objection, Plaintiff asks the Court to clarify that the Special Master's determination as to this issue is limited to claim construction only. According to Plaintiff, "[t]he Special Master did not need to determine the level of skill in the art for any purpose other than claim construction, including because the level of skill for other purposes is a question of fact for the jury." [Doc. 138, p. 2].

The Court does not construe the Special Master's recommendation to bind the Court in any way beyond claim construction. Indeed, the Special Master recognized that "[i]t may well be that any determination of the level of ordinary skill in this matter . . . may subsequently change if the Court finds, for whatever reason, . . . to revisit the issue as the case progresses." [Doc. 137, p. 11]. Ultimately, the Court finds that the Special Master's definition is limited to claim construction only and that the recommendation does not prevent Plaintiff from

arguing for a different definition of level of skill later in this case. Plaintiff's first objection is thus **OVERRULED** as unnecessary.

2. **Construction of "Catheter Assembly"**

In this case, the parties disagreed as to the proper construction of the term "catheter assembly." The Special Master recommended the following definition: "a coiled medical device that includes a catheter connected via tubing to a drainage receptacle." [Doc. 137, p. 24].

Both parties objected to the construction. In Plaintiff's objection, Plaintiff asks the Court to clarify that "coiled" requires at least one complete 360-degree turn. Plaintiff asserts that this clarification is necessary based on arguments that Defendant may make in the future. At this stage of the proceedings, where the objection is based on something that may hypothetically happen at a later date, it does not seem necessary to add any clarifications to the Special Master's proposed construction. As such, Plaintiff's objection is **OVERRULED** as premature.

Defendant made various objections to the Special Master's construction of the term "catheter assembly." First, Defendant objects to the inclusion of the word coiled because the plain and ordinary meaning of catheter assembly does not include a coiled limitation. Second, Defendant asserts that the Special Master erred because he relied on an out-of-context statement made by one of Defendant's

8

expert witnesses. In other words, Defendant contends that the Special Master improperly relied on extrinsic evidence. Ultimately, Defendant proposes the following construction: "a unit containing a catheter and one or more parts such that the unit can be connected to a drainage receptacle." [Doc. 140, p. 9].

The Court finds that the Report and Recommendation accurately relies on and applies the proper rules of construction. Indeed, the Special Master gave the disputed claim term its ordinary and customary meaning—that is, the meaning that the term would have to a person of ordinary skill in the art. Moreover, the Special Master considered and gave primary weight to all of the intrinsic evidence—beginning with the claims themselves, the specification and then the prosecution history. Lastly, the Special Master considered the extrinsic evidence presented, as appropriate. Because the Special Master properly applied the rules of construction, the Court finds that the Special Master correctly construed the disputed term. Accordingly, Defendant's objections that pertain to the construction of catheter assembly are **OVERRULED**.

3. **Construction of "Reveal" and "Reveal an Additional Layer of Wrap"**

The parties also disagreed as to the proper construction of the term "reveal" or "reveal an additional layer of wrap and the catheter assembly." The Special Master recommended that "reveal" be construed to mean "to make visible or able

to be seen." The Special Master further recommended that "reveal an additional layer of wrap and the catheter assembly" be construed to mean "to make an additional layer of wrap and the catheter assembly visible or able to be seen." [Doc. 137, p. 28]. According to Defendant, the Court should reject this construction because it does not resolve the parties' dispute over the claim term. Specifically, Defendant asserts that the Court must decide how much of the catheter assembly must be revealed. Defendant suggests the following construction: "to make visible or able to be seen any portion of the catheter assembly."[2]

The Court disagrees that the Special Master's construction does not resolve the parties' dispute. The Court is also not persuaded that Defendant's proposed construction is the correct one. If this Court were to adopt Defendant's proposed construction—to make visible or able to be seen any portion of the catheter assembly—the Court would have to read out a limitation from Claim 1 of the '786 Patent. As previously stated, Claim 1 requires "unfolding one or more layers of wrap to reveal an additional layer of wrap and the catheter assembly." [Doc. 1, p. 13]. Because Defendant's construction requires only that any portion of the

---

[2] This construction also does not specify how much of the catheter assembly must be revealed.

catheter assembly be revealed and omits the additional layer of wrap, the Court cannot adopt Defendant's construction.  After a *de novo* review, the Court discerns no error from the Special Master's construction, and therefore Defendant's objection is **OVERRULED**.

## CONCLUSION

For the reasons stated above, the objections filed by both Plaintiff and Defendant are **OVERRULED**, and the Report and Recommendation [Doc. 137] is **ADOPTED** as the order of this Court.

Now that the issues in this case have been somewhat narrowed, the Court believes mediation may be productive. This matter is therefore **REFERRED** to private mediation. The parties are **DIRECTED** to engage a private mediator and to split the mediator's costs evenly.  Mediation **SHALL** conclude no later than **May 20, 2024**.

While the parties are mediating, this case will be **ADMINISTRATIVELY CLOSED** and removed from the Court's active docket.  Moreover, the outstanding claim construction issue is **STAYED**.  The parties are **DIRECTED** to file a status report no later than **May 23, 2024**, indicating whether this matter is resolved.  If the case is not resolved at mediation, the parties are **DIRECTED** to file an updated scheduling order with the status report.  The Clerk is **DIRECTED** to submit the

parties' status report to the undersigned as soon as the report is filed, at which point the case will be restored to the active docket.

**SO ORDERED** this 20th day of February, 2024.

_____
J. P. BOULEE
United States District Judge